IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01604-PAB

T.D.B., a minor, by and through his mother, Raisa Simmons Burrell,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff T.D.B. on June 23, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

On June 7, 2013, plaintiff applied for supplemental security income under Title XVI of the Act. R. at 32. Plaintiff alleged that he had been disabled since January 1, 2007. *Id.* Plaintiff later amended his alleged onset date of disability to June 7, 2013. *Id.* After an initial administrative denial of his claim, plaintiff received a hearing before

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

an Administrative Law Judge ("ALJ") on December 16, 2014. *Id*. On January 29, 2015, the ALJ issued a decision denying plaintiff's claim. *Id*. at 32-47.

The ALJ found that plaintiff had the following severe impairments: depression, learning disorder, and attention deficit hyperactivity disorder. *Id*. at 35. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id.*, and ruled that plaintiff did not have an impairment that functionally equaled the severity of the listings. *Id.* at 35-46. The ALJ concluded that plaintiff had a marked limitation in interacting and relating with others and did not have an extreme limitation in any functional domain. *Id*. at 39-45.

On April 19, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's denial of his claim. *Id*. at 1-4. Given the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."
*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Three-Step Evaluation Process

"A child is considered disabled if she has 'a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Taylor v. Berryhill*, 679 F. App'x 661, 662 (10th Cir. 2017) (unpublished) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)).

The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled. 20 C.F.R. § 416.924(a); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). The steps of the evaluation are:

> (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404.

3

*Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). Under step three of the evaluation, the ALJ is required to assess a child's ability to function in six domains:

> (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [him]self; and, (vi) Health and physical well-being.

*Id.* (citing 20 C.F.R. § 416.926a(b)(1)(i)-(vi)). "A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability, when it results in 'marked' limitations in two domains or an 'extreme' limitation in one domain, as described in 20 C.F.R. § 416.926a." *Taylor*, 679 F. App'x at 662.

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred in three ways: first, by failing to list disruptive behavioral disorder as a severe impairment; second, by finding that plaintiff had marked, as opposed to extreme limitations in the domain of interacting and relating; and, third, by failing to support his decision with substantial evidence.[2] Docket No. 13.

#### *1. The Failure to List Disruptive Behavioral Disorder as a Severe Impairment*

Plaintiff argues that the ALJ erred by failing to list disruptive behavioral disorder as a severe impairment. Docket No. 13 at 7. At the December 11, 2013 hearing, the ALJ took the testimony of an impartial medical expert, Robert E. Pelc, Ph.D. R. at 70-84. Dr. Pelc testified that plaintiff suffered from disruptive behavioral disorder. R. at 71. The ALJ acknowledged this diagnosis, *id.* at 39, but did not identify disruptive

---

[2]In his opening brief, plaintiff identifies two issues on appeal: first, that the ALJ did not correctly apply the law and, second, that the ALJ's decision was not supported by the substantial evidence. Docket No. 13 at 3. The specific issues noted above are discussed in the body of plaintiff's brief. *Id.* at 7-12.

4

behavioral disorder as a severe impairment.  *Id.* at 35.  Plaintiff argues that, because "the ALJ did not identify disruptive behavior disorder as a severe impairment, he failed to discuss the effects of limitations of the disorder from one domain as it might have effects on another domain of functioning."  Docket No. 13 at 8.

As an initial matter, it was not reversible error for the ALJ to fail to identify disruptive behavioral disorder at step two.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (discussing the analogous analysis at step two in considering adult disability).  So long as the ALJ identifies a severe impairment at step two, the ALJ proceeds to step three and considers the child's ability to function in light of all of his impairments.  *Taylor*, 679 F. App'x at 662.  Thus, the relevant inquiry is whether the ALJ considered plaintiff's disruptive behavioral disorder at step three.

In conducting the step-three analysis, the ALJ acknowledged Dr. Pelc's finding that plaintiff suffered from disruptive behavioral disorder.  R. at 39.  Moreover, the ALJ discussed how plaintiff's behavioral issues affect his abilities in several functional domains.  *See* R. at 42-45 (discussing the domain of attending and completing tasks and noting that plaintiff's use of medication had made him "less angry," and that, in 2014, plaintiff had "fewer behavioral problems"; discussing the domain of interacting and relating with others and noting that plaintiff's moods and behaviors varied and contributed to a marked limitation in that domain.  The ALJ's analysis is supported by the testimony of Dr. Pelc, who acknowledged plaintiff's disruptive behavioral disorder, but found that plaintiff had marked limitation in only one functional domain.  *Id.* at 72-75.

The ALJ acknowledged Dr. Pelc's findings with respect to plaintiff's disruptive behavioral disorder and considered plaintiff's behavioral issues in conducting the step-

three analysis. Accordingly, the ALJ did not err in his consideration of plaintiff's disruptive behavioral disorder.

### *2. Plaintiff's Limitation in Interacting and Relating*

Plaintiff argues that the ALJ did not apply the correct law to determine whether plaintiff met or equaled a listing at step three. Docket No. 13 at 9-10. Plaintiff points to where Dr. Pelc stated:

> I don't know that I make necessarily a distinction I mean, between extreme and marked. . . . I can't imagine what would be worse than frankly the marked level so I don't have a specific operational answer for you about an extreme limit in that area. There's certainly [ ] markedly limited in that area. Meaning that that's the area that he basically cannot function in.

R. at 81. Plaintiff claims that "[t]he fact that the medical expert was unable to distinguish between an extreme limitation and a marked limitation in social functioning is good cause for a remand." Docket No. 13 at 9.

Plaintiff's argument does not consider Dr. Pelc's full testimony. Immediately after Dr. Pelc testified that he would not necessarily distinguish between marked and extreme limitations in the domain of interacting and relating with others, the ALJ provided Dr. Pelc with the definition of an extreme limitation in the listings:

> The regulations indicate a marked limitation means a limitation that is more than moderate, but less than extreme. It is the equivalent of the functioning that we would expect to find on standardized testing with scores that are at least two, but less than three standard deviations below the mean. Extreme limitations, when the impairment interferes very seriously with your ability to independently initiate, sustain, or complete activities.

R. at 82. The definition offered by the ALJ is consistent with the definition of an extreme limitation provided in the regulations. 20 C.F.R. § 416.926a(e)(3)(i) ("We will

6

find that you have an 'extreme' limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. . . . It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."). After the ALJ provided Dr. Pelc with the definition of an extreme limitation, Dr. Pelc testified that he believed plaintiff had a marked limitation in interacting and relating with others. R. at 83.

Accordingly, whatever error was manifested by Dr. Pelc's inability to distinguish between marked and extreme limitations was cured by the ALJ's reading of the definition and clarification of Dr. Pelc's testimony.

Moreover, in the ALJ's opinion, the ALJ described the correct legal standard for distinguishing between a marked and an extreme limitation. *Id.* at 34-35. Plaintiff provides no basis for concluding that the ALJ applied the wrong legal standard in evaluating plaintiff's limitations. Thus, the Court finds that the ALJ did not err in determining whether plaintiff had an extreme limitation in interacting and relating with others.

### 3. *Whether the ALJ's Decision was Supported by Substantial Evidence*

Plaintiff argues that the ALJ erred by failing to account for records of plaintiff's diagnostic test reports in 2014 "showing performance comparable to a 5th grader in math even with an extended time limit, and reading scores at the 3rd percentile and the 4th grade level." Docket No. 13 at 11. Plaintiff also argues that the ALJ failed to

7

consider the behavioral intervention plan put in place in 2015 to reduce plaintiff's defiant behavior. *Id.*

The evidence cited by plaintiff was not provided to the ALJ because it postdates the ALJ's decision. However, the materials were submitted to the appeals council and the appeals council considered the additional materials. R. at 2, 6-13. "Because the Appeals Council 'considered' [the supplemental records], the records are a 'part of the administrative record to be considered [by this court] when evaluating [the ALJ's] decision for substantial evidence.'" *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

The ALJ found that plaintiff had less than marked limitation in acquiring and using information. R. at 41. In making his determination, the ALJ noted that plaintiff had a full scale IQ score in the "extremely low to low average range." *Id.* In addition, the ALJ noted that plaintiff had difficulty learning but was placed in a general education math class and maintains a C+ to B- average in his language arts and humanities classes. *Id.* The evidence offered by plaintiff does not contradict these findings. Rather, the diagnostic report cited by plaintiff demonstrates that plaintiff has difficulties in math and reading, as acknowledged by the ALJ. R. at 1088-89.

Plaintiff additionally argues that the ALJ should have considered the behavioral intervention plan put forth by Adams County. Docket No. 13 at 11. The ALJ found that plaintiff had a marked limitation in interacting and relating with others. R. at 43. In so concluding, the ALJ noted that plaintiff had been involved in "nine incidents of major behavior ranging from inappropriate comments to physical aggression resulting in

suspension on several occasions. " *Id.* The ALJ further noted that plaintiff is disruptive and becomes upset when "he feels a teacher is singling him out or treating him differently." *Id.* at 43-44.

The behavioral intervention plan cited by plaintiff provides that plaintiff "is a smart young man who works well in class when he enjoys the activity and finds it personally meaningful. . . . [He] will treat adults disrespectfully when he feels something is not a good use of his time." R. at 1094. Nothing in the behavioral intervention plan contradicts the ALJ's findings. The plan acknowledges plaintiff's behavioral difficulties, but does not suggest either that his behavior has worsened since the hearing or that plaintiff suffers from more than a marked limitation in interacting and relating with others.

The Court finds that the ALJ's decision was supported by the substantial evidence. Accordingly, the Court finds that plaintiff has not presented grounds to reverse the ALJ's decision.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**.

DATED March 6, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge